**BANK OF HAWAII, Plaintiff,**

**v.**

**Stephen R. BENCHWICK, Bernice Benchwick, W. S. Schneider, Betty Schneider, W. D. Spruance, Jr., Edgar D. Crumpacker, William F. Thompson, Jr., as Clerk of the United States District Court for the District of Hawaii, and the United States of America, Defendants.**

**Civ. No. 1892.**

United States District Court
D. Hawaii.

Jan. 14, 1966.

---

**3.** See footnote 1, supra.

Anderson, Wrenn & Jenks, by Tobias C. Tolzmann, Honolulu, Hawaii, for plaintiff.

William F. Hannon, Castro Valley, Cal., for defendants Stephen R. Benchwick and Bernice Benchwick.

W. S. Schneider and Betty Schneider, defendants pro se.

Herman T. F. Lum, U. S. Atty., Dist. of Hawaii, by Yoshimi Hayashi, Asst. U. S. Atty., for defendant William F. Thompson, Jr., Clerk, U. S. Dist. Court for Dist. of Hawaii.

TAVARES, District Judge.

This is a civil action, in the nature of a creditor's bill, filed by the plaintiff Bank against several defendants, including the Clerk of this Court, to reach and have applied to a judgment in its favor and against the defendant Stephen R. Benchwick, the sum of $10,000 in cash deposited in the registry of this Court on behalf of Benchwick as security for bail pending appeal from a judgment of conviction by this Court in the matter of United States of America vs. Stephen R. Benchwick, Criminal No. 11,546. The case raises a number of largely unique questions as to the amenability to suit of funds deposited in the registry of a federal court, and of a clerk of such court on account of such funds.

Late in 1958, the defendant Benchwick undertook a scheme whereby he would draw checks on a branch of plaintiff Bank in amounts substantially in excess of credits to his account. These checks were used to purchase securities from a Honolulu stockbroker. The manager of the Bank's branch caused these checks to be paid, but instead of charging them to Benchwick's account so as to reflect overdrafts, he charged them to a deferred items account, which had the effect of concealing the overdrafts from the Bank's central office. Further manipulations of the branch's books were successfully effected by the manager from time to time for the benefit of federal and state auditors. Benchwick's account would remain in this condition for periods up to two weeks or more, at which time he would sell the securities he had purchased and deposit the proceeds. At this point, the branch manager would charge the outstanding but suspended checks against Benchwick's account, thereby creating a record which ostensibly reflected normal clearance.

So long as the stock market continued to rise, Benchwick was able to realize periodic short-term gains on stock transactions using the Bank's money in this manner. In the closing weeks of 1959, however, at a time when checks totaling some $82,850 were outstanding, the stock market inevitably went down instead of up, and Benchwick found himself holding securities of a value less than the amount of the outstanding checks. He liquidated his stock account but, instead of applying the proceeds to the reduction of his outstanding obligation to the Bank, he repaired to Nevada with a view to recoupment at the gaming tables. He claimed that his luck was bad and that he lost all but a small portion of the entire amount. No further deposits were made to his account at the Bank.

The branch manager being obviously unable to keep $82,850 worth of charges suspended in the air indefinitely, the loss soon came to the attention of the Bank's central office. The Bank promptly filed suit against Benchwick in a Hawaii state court, and on May 3, 1960, recovered a $92,254.51 judgment for the amount of such checks, certain unrelated unpaid loans, together with interest and costs. On August 1, 1960, Benchwick having removed to California, the Bank obtained a judgment of the United States District Court for the Northern District of California, on its Hawaii state court judgment, in the amount of $93,662.17.

In the meantime, Benchwick was indicted in this Court under 18 U.S.C. § 2 (a) for having aided and abetted the branch manager in the wilful misapplication of the funds of a federally insured bank in violation of 18 U.S.C. § 656. Following a jury-waived trial before District Judge Boldt, on a temporary assignment to this District from the Western District of Washington, Benchwick was on February 2, 1961, convicted and sentenced to the maximum penalty, namely, five years imprisonment and a fine of $5,000. Evidence adduced at the criminal trial gave rise to a reasonable belief that

Benchwick may not have gambled away as much as he claimed and may have secreted for future reference a substantial portion of the proceeds of liquidating his stock account.

It was against this background that the present action was filed. Benchwick appealed his conviction and applied for admission to bail pending appeal. Judge Boldt fixed bail at $10,000, and indicated that in the event of affirmance on appeal, $5,000 out of the $10,000 bail bond would be applied to the fine. Promptly on February 11, 1961, Benchwick's Hawaii attorney deposited with the Clerk of this Court the sum of $10,000 cash as security for the bail bond. With equal promptness, the Bank, on February 17, 1961, filed the complaint herein naming as defendants Benchwick, Bernice Benchwick, his wife, Betty and W. S. Schneider, his sister and brother-in-law, W. D. Spruance, his then California attorney, Edgar D. Crumpacker, his then Hawaii attorney, William F. Thompson, Clerk of this Court, and the United States of America.

The complaint alleged that Benchwick, by the fraudulent stratagem and scheme above described, had obtained the possession of a fund of $82,850 of the Bank's money; that he delivered a portion thereof for safekeeping to his wife, his in-laws or his California attorney; that some $11,000 was withdrawn from such fund and transmitted to his Hawaii attorney, who in turn deposited $10,000 of that amount with the defendant Clerk as security for bail pending appeal; and that the Bank had not consented to the use of its money in this fashion. It was prayed that the $10,000 be declared impressed with a trust in favor of the Bank, and that the defendant Clerk be directed to pay the same over to the Bank.

In the alternative, the complaint alleged the above described judgments and the Bank's inability to find any assets of Benchwick subject to execution, and prayed that if the $10,000 deposit be found to be the property of Benchwick, rather than of the Bank, that it be applied to the Bank's judgment. It was further prayed that any transfers of the fund by Benchwick to his wife, in-laws or attorneys, or transfers back and forth among those defendants, be set aside as fraudulent conveyances. These prayers for alternative relief were expressly made subject to the contingencies and purposes for which the fund had been deposited.

Simultaneously with the filing of this complaint, the Bank filed a motion in the criminal case for an order authorizing the imposition of a lien upon the $10,000 fund.

Benchwick and his wife jointly filed an answer in which it was claimed that the fund deposited had come from the wife's separate property, and was neither the Bank's nor Benchwick's. Benchwick's in-laws, the Schneiders, did not engage counsel or file a formal answer, but did address to the Court a letter, which for the purposes hereof has been treated as an answer and appearance of such defendants in propria persona, disclaiming any interest in the fund, alleging that they had lent money to Benchwick's wife and suggesting that some of that money may have been used to make the deposit in question. The defendants W. D. Spruance, Jr. and Edgar D. Crumpacker, Benchwick's then California and Hawaii attorneys, defaulted.

The United States of America interposed a motion to dismiss as to it on the grounds of sovereign immunity, which motion was granted. The defendant Clerk of this Court likewise filed a motion to dismiss claiming that the Court lacked jurisdiction over the subject matter because the prayer for specific relief against the Clerk, as a government officer, was, in effect, a suit against the sovereign, which had not waived its immunity; that the complaint failed to state a claim upon which relief could be granted, because the fund which was the object of the action was property in *custodia legis* and hence immune from and not available for relief of strangers to the purpose for which the Court took custody thereof; and that the United States was a necessary and indispensable

party, and because it could not properly be joined the entire action must fail.

■ The Court's jurisdiction, said in the complaint to be inherent, was not otherwise challenged. Putting other obstacles to suit aside, it is clear beyond question that this Court, independent of the citizenship of the parties, or the presence or absence of statute, must have the power, inherent in its very existence as a court, to entertain actions and otherwise dispose of claims concerning property in its custody. Its ability to function as an effective instrument for the dispensation of justice would otherwise be less than complete. Cf. Gumbel v. Pitkin, 124 U.S. 131, 145, 8 S.Ct. 379, 31 L.Ed. 374 (1888); 1 Moore, Federal Practice, paragraph 0.60 [6].

■ The Court denied the Clerk's motion to dismiss. Since the Court's sufferance of the maintenance of the creditor's bill against the Clerk was tantamount to impressing the fund in question with an equitable garnishment, Clarke v. Chicago B. & Q. R. Co., 91 F.2d 561, 563 (10 Cir. 1937), plaintiff's motion in the criminal case for an order authorizing the imposition of a lien on the fund was denied as superfluous. An order was entered in that case, however, forbidding the Clerk from releasing all or any part of the fund until further order of the Court.

■ The argument that the Clerk of this Court enjoys sovereign immunity assumes that prior to or immediately upon the deposit of the fund in question the United States acquired an interest in it, and that the granting of the relief prayed against the Clerk would indirectly, but necessarily, disturb that interest. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In the Larson case, injunctive relief was sought to prohibit the War Assets Administrator from selling or delivering certain coal, title to which was in or claimed by the sovereign. The action was dismissed on the grounds that while nominally against the individual government agent, the action was in ef-

fect against the sovereign because in deciding the case the Court would necessarily have had to pass upon the sovereign's title, and judgment favorable to the plaintiff would necessarily have affected the ability and manner in which the sovereign, through its agent, might act with reference to property it claimed was its own to do with as it saw fit. No such situation is presented here, however, for the United States has no proprietary rights in cash deposited as security for bail.

Under the Federal Rules of Criminal Procedure, the matter of bail and the security therefor is committed completely to the discretion of the Court. Under Rule 46(a) (2), this Court has discretion to allow bail or not pending appeal from a conviction. The amount of the bail, if allowed, is for the discretion of the Court. Rule 46(c). The Court, in its discretion, may require security in the form of sureties, or may accept cash, bonds or notes in lieu of sureties, or may dispense with a requirement for security. Rule 46(d). The Court may at any time in its discretion revoke its order admitting the defendant to bail. Rule 46(a) (2). In the event of a breach of condition of the bail bond, the Court has broad discretion to declare or not a forfeiture of the same, and to set aside any forfeiture declared and to remit all or any part of any judgment thereon. Rule 46(f). The existence in the sovereign of proprietary rights in bail deposits, which rights would be beyond the power of the Court to affect by its judgments and orders, would be inconsistent with the effective exercise of the discretion thus vested in the Court by Rule 46. The institution of bail is a uniquely judicial one, and exists not for the proprietary benefit of the sovereign, but specifically as a tool for use by the courts in the proper administration of criminal justice. Any rule that a district court, once having ordered a bail deposit, is without power thereafter to make and enforce such orders and judgments relative thereto as justice requires, because of immunity of its own clerk in the handling of funds

in which the sovereign has a property interest, would so detract from the power and dignity of the court in the administration of criminal justice as to be inconsistent with the system of courts which our Constitution contemplates.

 Nor did the sovereign acquire an interest in the fund, beyond the power of the Court to affect, by reason of the imposition of a fine against Benchwick. The most that the United States could have acquired as a result of that action in the criminal case was a lien on the fund to the extent that it was the property of Benchwick. 18 U.S.C. § 3565 provides that a criminal fine may be enforced like a civil judgment, and this includes the perfection of a judgment lien in accordance with state law. 28 U.S.C. § 1962; United States v. Taylor, 321 F.2d 339, 342 (4th Cir. 1963). If the United States had perfected a judgment lien on the fund, the dismissal of the United States as a party defendant would have been improvident because there has been a statutory waiver of sovereign immunity as to actions to quiet title to or enforce liens upon property in which the United States claims a lien. 28 U.S.C. § 2410. In any event, however, by successfully moving for dismissal as to it on the grounds of sovereign immunity, the United States has, in effect, indicated that it has or claims no lien upon the fund within the purview of that statute. Similarly, the defendant Clerk has not claimed, nor does it otherwise appear, that the United States had levied or attempted to levy execution upon the fund prior to the filing of plaintiff's complaint. There is no statute in Hawaii whereby the mere rendition of a judgment creates a lien on personalty, and a lien on such property in Hawaii can be obtained only by a writ of execution. Estate of Lopez, 19 Haw. 620, 624 (1909). Cf. Miller v. Bank of America, 166 F.2d 415, 418–419 (9 Cir. 1948).

While some courts have authorized the payment of fines out of bail deposits in the absence of statutory authority, even when such deposits are made or claimed by third persons (compare United States v. Widen, 38 F.2d 517 (N.D.Ill.1930) with Heine v. United States, 135 F.2d 914 (6 Cir. 1943), and see Annot., 92 A.L.R.2d 1084 (1963)), there is no indication that in so doing such courts have purported to enforce a property interest of the United States in the deposited fund itself, or were otherwise doing anything other than applying a presumptively unencumbered asset of the criminal defendant, as a matter of expediency and judicial discretion, to an unsecured claim of the Government. Nor is there any indication in such cases that the courts would have deemed refusal to make such application as an interference with some proprietary or governmental interest of the sovereign without the sovereign's consent. Indeed, the very fact that some courts have exercised discretion to apply bail deposits to claims of the United States for fines bespeaks the existence of similar power and discretion to apply such funds to the claims of others.

It follows that the United States, having no interest in the fund as such, is not only not a necessary or indispensible party, as claimed by the defendant Clerk, but is not even a proper party. For the same reason, the plaintiff's action against the Clerk could not, directly or indirectly affect any interest of the sovereign in violation of the sovereign's immunity. The only interests which the relief prayed in the complaint would affect are those of the other named defendants and of this Court in the orderly progress of the criminal proceeding in which the fund was deposited. The latter gives rise to the defendant Clerk's further claim that the fund itself is immune from suit as being *in custodia legis*.

 It is, of course, well settled that deposits in court, like any other property *in custodia legis,* are not, as a matter of course, subject to attachment, garnishment, levy of execution, lien of creditors' bill or other process, whether issuing out of another court or the very court in which the same are deposited. The purpose of this rule is to prevent

embarrassment to or interference with the orderly progress of the proceeding in which custody of the property was taken by the court. 7 C.J.S. Attachment § 88; 33 C.J.S. Executions § 55c. It is equally well settled, however that property *in custodia legis,* including bail deposits, may be subjected to process or lien at the discretion of the court having custody thereof, at least where the purposes of the court's custody have been fulfilled. This case is unusual only in that it invokes the court's discretion to subject a bail deposit to suit *prior* to the full accomplishment of the purpose of the deposit, namely, to secure the surrender of the defendant Benchwick in the event of affirmance of his criminal conviction on appeal. Plaintiff argues that any rule which would make this Court's grace available to it only after the disposition of the defendant Benchwick's appeal would give rise to the curious phenomenon of a convicted wrongdoer obtaining liberty pending appeal by the use of his victim's money, with the victim remitted to the dubious remedy of encampment at the doors of both the Clerk of the Court of Appeals for the Ninth Circuit and the Clerk of this Court to await the accomplishment of the purpose of the deposit and to invoke this Court's power to grant it relief at the instant of the inception of such power, before anyone else could withdraw the deposit. Plaintiff further argues that notwithstanding the paucity of specific precedent, the power of this Court to render more effective justice must surely not be lacking. This Court agrees.

It is true, that such reported precedent as there is, strictly speaking, supports only the discretion of a court to subject bail deposits to third party action *after* the purpose of the deposit has been accomplished. The reasoning of such authority, however, in the light of the purpose of the *in custodia legis* rule, is in no way inconsistent with but rather is entirely cogent with respect to the exercise of a similar discretion *prior* to the accomplishment of the purpose of the deposit.

Thus, in Bankers' Mortgage Co. v. McComb, 60 F.2d 218 (10 Cir. 1932), criminal defendants had deposited bonds as security for bail. Several days after dismissal of the indictment, their attorneys filed a petition in the criminal case setting out that they had filed action against the defendants in a state court to recover attorney's fees and prayed an order authorizing garnishment of the clerk. Such an order was entered. The clerk made answer to the writ of garnishment thereafter served upon him to the effect that certain bonds held by him were *in custodia legis* and not subject to garnishment. Thereafter, the mortgage company filed a petition, likewise in the criminal case, claiming that it had furnished the bonds in question to the defendants and prayed their return. Still later the mortgage company and the defendants joined in another petition in the criminal case alleging an assignment of the bonds by the defendants to the mortgage company prior to the service of the writ of garnishment.

As to the order authorizing garnishment of the clerk, the court noted the general rule that where a person's possession of property constitutes *custodia legis,* he cannot be subjected to garnishment process in respect of such property. Nevertheless, it was held that under the circumstances it was within the discretion of the trial court to permit garnishment of the bonds in the hands of the clerk:

"The reason for the rule is that to require such a person to respond in garnishment would result in an interruption of the orderly progress of judicial proceedings and in an invasion of the jurisdiction of the court which has legal custody of such property. [Citations omitted].

"Such a person, with the consent of the court having custody of such property, may be held as garnishee after the purposes of the law's custody have been accomplished and such court has by order directed delivery thereof to the garnishee-debtor. Under such circumstances

garnishment will not interrupt the progress of judicial proceedings in such court nor invade its jurisdiction. The officer holds the property not for the law but for the person entitled thereto; and the reason for the rule no longer exists. [Citations omitted].

"We are of the opinion however that the question of whether the purposes of the law's custody have been fully accomplished should be determined by the court whose officer has custody of the property, and that garnishment should not be permitted without the consent of that court. In re Chakos (D.C. Wis.) 36 F.2d 776." 60 F.2d at 221.

As to the mortgage company, while acknowledging the justiciability of its allegations, and the power of the court "in a proper proceeding * * * [to] inquire into the true title [to the bonds] as between third persons and the defendant or his creditors, and direct that they be delivered to the true owner," the court dismissed its petition on the ground that it was a stranger to the criminal proceedings in which intervention was not authorized. The dismissal was, however, expressly made "without prejudice to the right of the Mortgage Company to bring a plenary suit to establish its title to such bonds and to secure an order directing their delivery to it." 60 F.2d at 222.

In Jacobson v. Hahn, 14 F.Supp. 339 (N.D.N.Y.1936), modified on appeal, 88 F.2d 433 (2 Cir. 1937), a plenary suit of the sort suggested by the court in the Bankers' Mortgage case was maintained against the clerk of the court and relief was granted. In that case, a third person, several days after the acquittal of a criminal defendant, applied to the clerk of the court for the delivery of certain Government bonds which had been deposited in lieu of bail, and which he claimed were his. The clerk refused, and an objection to the court's jurisdiction to compel delivery of the bonds in summary proceedings in the criminal case was sustained. The claimant thereupon brought a separate suit in equity against the clerk

of the court to recover the bonds, and against the collector of internal revenue to cancel and declare void a notice of tax lien which had been filed with the clerk for the purpose of securing the criminal defendant's tax liability. The action proceeded to judgment partly in favor of the plaintiff without any apparent serious challenge or doubt as to the jurisdiction of the court to entertain it. The court did, however, note in passing that the Bankers' Mortgage case clearly established the power of the court "to determine the rightful ownership of the bonds where contesting liens or claims are filed with the consent of the court * * *." 14 F.Supp. at 343.

Plaintiff's action here differs from the garnishment and suggested plenary suit involved in the Bankers' Mortgage case, and from the equity suit against the clerk in the Jacobson case, only in that it was commenced immediately after the deposit was made and before the accomplishment of the purpose thereof. While the Bankers' Mortgage case speaks in terms of determining "whether the purposes of the law's custody have been *fully* accomplished" (60 F.2d at 221; emphasis added), and in point of fact the purpose of the bail deposit there, as in the Jacobson case, had been fulfilled, it is apparent from the court's analysis that the operative consideration is whether the maintenance of action by a creditor or a third party claimant will tend to interfere with the orderly progress of proceedings in the case in which the deposit was made. Therefore this Court will exercise its discretion and does find that the maintenance of this civil creditor's action will not materially embarrass or interrupt the progress of the pending criminal proceeding. As both cases are before the same court, the court's control of its own calendars and process allows it ample opportunity to coordinate and to prevent conflict between the two proceedings. Granted that the potential for conflict recommends against any but the most sparing exercise of such discretion, nevertheless when, as here, the interests of

justice so obviously require, this Court will not disclaim altogether the power, even though its exercise may to some extent increase the Court's administrative burden.

This view finds support in Clarke v. Chicago B. & Q. R. Co., 91 F.2d 561 (10 Cir. 1937), which was decided by the same court which decided the Bankers' Mortgage case. In the Clarke case, petitions were filed by a plaintiff in certain civil actions in which judgments in its favor remained unpaid, to reach and have applied to those judgments money deposited in the registry of the same court in another civil action. The entry of orders impounding the money in the registry pending determination of the judgment creditor's petitions was upheld against a challenge to the jurisdiction of the District Court. The Court of Appeals said:

> "A court of equity is not powerless thus to prevent a judgment debtor from withdrawing money from its registry and at the same time continue the nonpayment of a judgment, leaving the judgment creditor utterly without remedy." 91 F.2d at 563.

The case in which the money had been deposited was a mortgage foreclosure matter, and the fund was held for the purpose of satisfying the claims of holders of bonds secured by the mortgage. The judgment debtors had filed certain claims to that fund. The impoundment orders preceded by *three years* the time within which further claims to the fund might be filed. The fact that the purpose of the law's custody of the deposit had not yet been fully accomplished was evidently found not to be an impediment to the district court's discretionary power to entertain the creditor's action and to impound the fund in the meantime:

> " * * * a clerk, receiver, or other representative of the court having money or property in custody may, with the consent of the court, be subjected to such process after the purpose for which it was taken into custody has ceased; and the question whether such purpose has terminated to the point that process of that kind will not interrupt the orderly progress of judicial proceedings or invade the jurisdiction of the court should be determined by the court whose officer has the property or money in custody. Bankers' Mortgage Co. v. McComb (C.C.A.) 60 F.(2d) 218. Here all of the cases were pending in the same court. The orders restraining withdrawal or disturbance of the money and directing the clerk to retain it operated as equitable garnishments; and it must be held that, in entering them, the court gave its consent that the clerk be subjected to such process, and determined that it would not disturb orderly judicial proceedings." 91 F.2d at 564.

Significantly, in the Jacobson case it appears that the collector of internal revenue had filed with the clerk of court a notice of tax lien and levy against the property of the criminal defendant, one week after the filing of the indictment and on the same day that certain bonds were deposited in lieu of bail. It was not until some five months later that the criminal trial was concluded and the defendant acquitted. Thereafter, in connection with the plaintiff's demand upon the clerk for delivery of the bonds, a question was raised as to the efficacy of the notice in view of the fact that it had been filed without consent of the court. The court granted an order *nunc pro tunc* permitting the filing as of some eight months earlier. No question appears to have been raised as to the propriety of consenting to the imposition of a lien upon the fund prior to the accomplishment of the purposes of the deposit thereof and indeed on the very day that the deposit was made. However, the court must necessarily have determined, albeit with the aid of hindsight, that the existence of such lien would not disturb orderly proceedings in the criminal case.

In like manner, it is the finding of this Court that the maintenance of plaintiff's

action against the Clerk, and the equitable garnishment of the bail deposit resulting therefrom, do not tend to disturb the orderly progress of the pending criminal appeal, notwithstanding that the purpose of the Clerk's custody of the deposited fund had not yet been fulfilled.

It may be noted in this connection that the alternative relief prayed in plaintiff's complaint, premised on the possibility that the Court might find the bail deposit to be an asset of the defendant Benchwick, is expressly made subject to "the contingencies and purposes upon and for which the [fund] was deposited". Hence, plaintiff, to this extent, by the very terms of its complaint disclaims any endeavor to interfere with the criminal proceeding.

Further, as to the first count of the complaint, which alleges that the money deposited by Benchwick actually belonged to the Bank, and on the basis of which it is prayed that the Clerk be directed to deliver the same to the Bank, the Court, by suffering the maintenance of the action before the fulfillment of the purpose of the deposit, is simply doing directly and with less disturbance to the status of the criminal case, that which it would have undoubted power to do in more circuitous and drastic fashion. It has been noted that under Rules 46(a) (2) and 46(d), Federal Rules of Criminal Procedure, this Court has discretion as to the form of security for bail and to revoke any order admitting a defendant to bail pending appeal. If it were made to appear that a criminal defendant had deposited as security for bail, money he had feloniously obtained from his victim in the very transaction for which he stands convicted, this Court would unquestionably have the power to disapprove the form of that security and/or to revoke its order admitting him to bail. If in such case the criminal defendant should fail to surrender himself, the Court likewise has ample discretion under Rule 46 (f) to refuse to forfeit the bail deposit. In either case, the purpose of the Clerk's custody of the fund would have been fully accomplished, and under existing

precedent there would clearly be no defect in this Court's power and discretion to entertain plaintiff's claims. To allow plaintiff's complaint to pend while the bail bond remains in effect and the purpose of its security unfulfilled, is a less drastic procedure which affords greater justice to all parties concerned and with less, rather than more, disturbance to the orderly progress of the criminal procedure, the protection of which is the reason for the *custodia legis* rule which the Clerk invokes.

The defendant Benchwick's conviction and sentence was in due course affirmed on December 4, 1961. Benchwick v. United States, 297 F.2d 330 (9 Cir. 1961). On June 22, 1965, at which time the present action remained at issue and untried, the United States applied *ex parte* for an order in the criminal case requiring the Clerk to withdraw $5,000 out of the $10,000 deposited in the registry of the Court and apply the same to Benchwick's fine. Informal courtesy notice of the *ex parte* application was given to the Bank. Following a summary hearing in the criminal case, the Chief Judge of this district, on June 22, 1965, entered an order directing the Clerk to withdraw the sum of $5,000 from the deposit and pay the same to the United States on account of the fine, on the ground that for the purpose of the criminal case the bail deposit must be conclusively presumed to be the property of the defendant Benchwick, notwithstanding the allegations of the plaintiff Bank and whether or not the Bank should succeed in proving those allegations upon a trial of the present action. A motion by the Bank to vacate that order remains pending.

On November 2, 1965, pursuant to leave granted by the Court, the defendants Stephen R. Benchwick and Bernice Benchwick filed herein an amended answer admitting that the $10,000 fund deposited with the defendant Clerk was at all times the property of the plaintiff Bank, denying any interest in that fund, and generally submitting to the judgment of the Court. On November 8, 1965, the plaintiff Bank filed an

alternative motion for judgment on the pleadings or for summary judgment that the sum of $5,000 then remaining on deposit in the registry of the Court is and at all times material was the property of the Bank, and directing the defendant Clerk to pay the same forthwith to the Bank. For the foregoing reasons, this Court now reaffirms that it is not without power and discretion to grant the relief prayed by the plaintiff, and orders and directs that judgment be entered in the form submitted by plaintiff.