Solange LANDAU, Plaintiff,

v.

Toni VALLEN, Haas Securities Corp., Eugene K. Laff, Stanley Aslanian, Jr., Mark Burgess, L.F. Rothschild & Co., Inc., Robert Schoenthal, Mathew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Kuhns Brothers, Laidlaw, Inc. f/k/a Laidlaw Adams & Peck, Inc., Walter Baur, Henry Lorin, Henlor Capital, Ltd., Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, Maureen Steffenson, Dr. Irwin Zandman, Capital Shares, Inc., Lawrence C. Caito, H. Clinton Pollack, Frank Shannon, Yarrimup (A Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano, Jacques M. de Stadelhofen, Legal Assistant Corporation and John Does I–IX, Defendants.

R. Graig OVERTURF, Plaintiff,

v.

HAAS SECURITIES CORP., Eugene K. Laff, Stanley Aslanian, Jr., L.F. Rothschild & Co., Inc., Robert Schoenthal, Mathew R. Deane, Francois Mayer, Robert R. Errico, Andrew Berger, Joel Miller, Henry Lorin, Henlor Capital, Ltd., Joelle Harris a/k/a Mrs. Joelle Lorin, Enn Kunnapas, Linda Kunnapas, Toni Vallen, Maureen Steffenson, Dr. Irwin Zandman, Capital Shares, Inc., Lawrence C. Caito, H. Clinton Pollack, Frank Shannon, Yarrimup (A Corporation), J.T. Moran & Co., Inc., John T. Moran, Paul R. Miano, Jacques M. de Stadelhofen, Legal Assistant Corporation and John Does 1–10, Defendants.

Nos. 88 CIV. 1622 (LBS), 88 CIV. 2749 (LBS).

United States District Court, S.D. New York.

Oct. 19, 1989.

Gusrae, Kaplan & Bruno, New York City, for plaintiffs Solange Landau and R. Craig Overturf; Mark J. Astarita, of counsel.

Rosenman & Colin, New York City, for defendant Frank Shannon; Gilbert S. Edelson and Diane da Cunha, of counsel.

SAND, District Judge.

Plaintiffs allege that the defendants violated the 1933 and 1934 Securities Acts and the Racketeer Influenced and Corrupt Organizations statute (RICO), and committed statutory and common law fraud in connection with securities investments made through Haas Securities Corporation and other broker dealers. After filing two amended complaints, plaintiffs moved for an order of attachment against the assets and property in which Defendant Frank Shannon, an alleged member of a related conspiracy to manipulate stocks, had an interest.

At the time of the attachment motion, Shannon was free on bail awaiting sentencing for his conviction on a one count information charging that he had falsely and fraudulently filed a form 13D with the Securities Exchange Commission. Shannon's bail, which was originally set at $10 million, of which $3.5 million was in cash, was subsequently reduced to $350,000 in cash. On June 27, 1987 Shannon was given a suspended sentence and fined $10,000. Transcript of August 23, 1989 oral argu-

ment at 5. Plaintiffs now seek to include Shannon's bail within the scope of the order of attachment.

Plaintiffs sought and were granted an *ex parte* temporary restraining order enjoining the Clerk of this Court from transferring any of Shannon's assets pending decision on this motion. Were it not for the temporary restraining order, the Clerk of the Court would have been authorized to release the cash deposit held for Shannon's bail after his sentencing. The issue to be decided by this Court is whether cash deposited by a criminal defendant with the Clerk of the Court as bail can be attached by a private party seeking to collect upon a judgment. It appears that no Second Circuit court has considered this issue.

Early cases established the rule that funds in the registry of the court are generally not subject to attachment to satisfy judgments against the owner. *See e.g. The Lottawanna*, 87 U.S. (20 Wall.) 201, 22 L.Ed. 259 (1873). In *Bucher v. Vance*, 36 F.2d 774 (7th Cir.1929), a plaintiff who had recovered a state court judgment against a defendant sought to seize funds deposited by the defendant in federal court as part of a different suit. The Court noted that the "trend of federal decisions" was "quite strongly against the right to subject such a fund to control by the process of another court," *id.* at 775, and held that absent federal statutory authorization, the fund could not be subjected to "seizure on behalf of creditors of the owner." *Id.* at 776.

Despite the general rule established in these cases, courts have nonetheless carved out two exceptions. At least one federal court has held that attachment or garnishment can take place "after the purposes of the law's custody have been accomplished ..." *Bankers' Mortg. Co. of Topeka, Kan. v. McComb*, 60 F.2d 218 (10th Cir.1932); *See also Bank of Hawaii v. Benchwick*, 249 F.Supp. 74, 81–82 (D.Haw.1966) (citing the *Bankers' Mortgage* holding with approval). Since the purpose of bail is to secure the presence of a criminal defendant, *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951), the rule set out by these cases would permit attachment of bail after a criminal defendant has appeared.

A number of courts have rejected the *Bankers' Mortgage* exception on a variety of different grounds. *See American Exch. Life Ins. Co. v. Putnicki*, 510 F.Supp. 19, 20–21 (W.D.Tex.1980) (even though United States has no further interest in maintaining bond, law of sovereign immunity prevents court from serving as "collection agency" by releasing bail funds to private party to satisfy judgment against defendant); *Corporation Co. of Miami v. Mikelis*, 467 F.Supp. 826, 827 (S.D.Fla.1979) (finding *Bankers' Mortgage* holding to be in conflict with *The Lottawanna* rule that these types of funds are not "by law in the hands of the clerk nor of the judge"); *Reed Marketing Corp. v. Diversified Marketing, Inc.*, 419 F.Supp. 125, 126 (N.D.Ill.1976) (practice of allowing garnishment of money posted with the court would impose "an additional litigational burden upon the already crowded federal dockets," introduce "serious questions of priority" among competing creditors, and increase cost of bond loans obtained by indigent prisoners who would have become less capable of repayment).

The second exception occurs where the claim asserted is ownership of the very funds posted as collateral. In *Bank of Hawaii*, the Court was presented with a case where the purpose of bail had not yet been fulfilled because the defendant remained free on bail pending appeal. Nevertheless, the Court found that because the bail consisted of money taken directly from the plaintiff bank, justice would be better served if the fund were paid directly from the Court to the bank. 249 F.Supp. at 83–84. *See Mikelis*, 467 F.Supp. at 827 (adopting a similarly narrow reading of *Bank of Hawaii*). Since the facts of *Bank of Hawaii* are in no way analogous to this case and since the plaintiffs assert no interest in the actual bail money, the Court need not consider the wisdom of this particular exception.

Defendant Shannon has been sentenced in this case and would ordinarily be entitled to a return of his bail money. The Court must therefore decide whether attachment should be permitted after the purposes of

the bail have been accomplished. It should be noted at the outset that the logic underlying the *Bankers' Mortgage* exception is, we believe, to a large extent flawed. After the individual defendant appears for the criminal proceeding, the purpose of bail with respect to *that* individual defendant has been accomplished. Nevertheless, the Court must also consider the effect such a rule would have on future defendants. Bail seeks to increase a criminal defendant's incentive to appear. Any rule which makes it less likely that the defendant will recover bail reduces this incentive and undermines the purpose of bail. Under the *Bankers' Mortgage* analysis, future criminal defendants would be aware of the decreased likelihood of eventually recovering bail money and would be that much less likely to appear at the criminal proceeding. Thus, wholly apart from any concern for administrative burdens or complexities (especially in multi-party cases such as this), the Court believes that permitting the attachment of bail after a defendant's appearance would be unwise.[1]

Furthermore, if the attachment of bail were permitted, defendants might be less willing to post bail in the first place or experience greater difficulties in procuring bail bonds. As a result, these defendants would be more likely to remain in custody, imposing greater costs upon the criminal justice system.

For the reasons stated above, plaintiffs' motion to attach Defendant Shannon's bail is denied. We do not reach Shannon's further contention that plaintiffs have not met the statutory requirement for attachment, i.e. that they demonstrate a probability of success on the merits. Return of the funds is stayed for ten (10) days to permit application for a further stay to the Second Circuit Court of Appeals.

SO ORDERED.

---

[1] We find no merit in plaintiffs' assertion that attachment and garnishment proceedings are distinguishable for these purposes.