STATE of Wisconsin, Plaintiff-Respondent,

v.

Lori IGLESIAS, Defendant-Appellant.

IN the MATTER OF STATE of Wisconsin v. Lori IGLESIAS:

Leroy BOCHLER and Frank Miller, Appellants,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*Nos. 92–2437–CR, 92–2679–CR. Oral argument May 26, 1994.—Decided June 22, 1994.*

(Also reported in 517 N.W.2d 175.)

118

119

For the defendant-appellant there were briefs and oral argument by *Keith A. Findley,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

For the appellants there were briefs by *Bill Ginsberg, Rick B. Meier* and *Mandell & Ginsberg,* Madison and oral argument by *William M. Ginsberg.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JON P. WILCOX, J. These consolidated cases are before us on certification by the court of appeals pursuant to sec. (Rule) 809.61, Stats. Appellants present two issues for review. The first is whether the circuit court erroneously exercised its discretion when it imposed a fine against the defendant-appellant Lori Iglesias (Iglesias). The second is whether sec. 969.03(4), Stats.,[1]

---

[1] Section 969.03(1), Stats., (1989–90), provided that:

A defendant charged with a felony may be released by the judge without bail or upon the execution of an unsecured appearance bond or the judge may in addition to requiring the execution of an appearance bond or in lieu thereof impose one or more of the following conditions which will assure appearance for trial:

. . .

violates the United States and/or Wisconsin constitutions by providing that bail money can be used to satisfy fines and costs imposed against a defendant. We conclude that the answer to both these questions is "no," and therefore affirm the judgment of the circuit court.

In the spring of 1991, Iglesias was arrested and charged with multiple criminal offenses stemming from her role in engaging two fourteen-year-old girls to work as prostitutes. The circuit court eventually set bail at $11,750. This amount was posted on Iglesias's behalf by Leroy Bochler and Frank Miller. Bochler was a business partner of Iglesias's brother. He posted $5,750. Frank Miller, a friend of Iglesias's, posted the remaining $6,000. Upon posting these amounts, both

(d) Require the execution of an appearance bond with sufficient solvent sureties, or the deposit of cash in lieu of sureties. If a judgment for a fine or costs or both is entered, any deposit of cash shall be applied to the payment of the judgment.

In 1991, this statute was renumbered and slightly reworded. The first paragraph of sec. 969.03(1) remained exactly the same, but sec. 969.03(1)(d) now provides that a judge can:

Require the execution of an appearance bond with sufficient solvent sureties, or the deposit of cash in lieu of sureties.

The new sec. 969.03(4) states that:

If a judgment for a fine or costs or both is entered in a prosecution in which a deposit had been made in accordance with sub. (1)(d), the balance of the deposit, after deduction of the bond costs, shall be applied to the payment of the judgment.

For purposes of this appeal, the statutes' pertinent provisions are identical. Thus, while throughout this opinion we reference the newly-created sec. 969.03(4), Stats., our analysis applies equally to the former sec. 969.03(1)(d).

125

Bochler and Miller were given a receipt which contained the following language:

> In the event the court orders a judgment for a fine or costs or both, the amount of cash deposited with this bond, if any, shall be applied to the payment of the judgment. This means that before any money is returned to the person or persons making the cash deposit, the cash deposit will first be used for payment of the judgment. Any excess will be returned to the person or persons making the cash deposit. (See ss. 969.02 and 969.03 Wis. Stats.)

On October 21, 1991, Iglesias was convicted of one count of soliciting a child for prostitution, sec. 948.08, Stats., one count of child enticement, party to a crime, secs. 948.07(2) and 939.05, and four counts of second degree sexual assault of a child, party to a crime, secs. 948.02(2) and 939.05.

At sentencing, the circuit court discussed the factors it considered in arriving at what it believed was an appropriate sentence. On one hand, the court expressed sensitivity to the fact that in June of 1991, Iglesias was diagnosed as HIV positive. The court believed Iglesias's medical condition was counterbalanced, though, by the seriousness of her crimes, and the need to send a strong message to the community for deterrence purposes. In the end, the court sentenced Iglesias to twelve years in prison. Additionally, the court imposed a fine against Iglesias in the amount of $1,500 for each of the six counts. Those fines, along with costs, totalled $11,210. Pursuant to sec. 969.03(4), Stats., the court ordered that the bail money be used to satisfy this judgment, with any remaining funds returned to Bochler and Miller.

Iglesias, Bochler and Miller all filed postconviction motions with the circuit court. The thrust of Iglesias's motion was that the circuit court erroneously exercised its discretion when it imposed a fine without first assessing her ability to pay. Iglesias asked that the fine be vacated, or in the alternative, that the funds be returned to Bochler and Miller and that she be held personally liable for the fine. Bochler and Miller moved that the money they posted for bail be returned to them on the grounds that sec. 969.03(4), Stats., violated various provisions of the United States and/or Wisconsin constitutions. The circuit court denied their motions. Appellants then appealed to the court of appeals, which consolidated and certified their cases to this court.

The first issue we address is whether the circuit court abused its discretion when it imposed a fine against Iglesias. Iglesias advances two arguments in this regard. First, she maintains that the circuit court's decision to impose a fine was premised upon that court's mistaken view of the law governing sentencing. Specifically, she argues that the circuit court mistakenly believed that a defendant's health cannot be a factor at sentencing. Thus, when the court gave Iglesias a shorter prison term than it otherwise would have, it felt compelled to compensate by imposing a substantial fine. In other words, Iglesias's argument is that the court would never have imposed a fine had it properly realized that a defendant's health can be considered at sentencing.

Sentencing is a discretionary judicial act reviewable by this court in the same manner as all other discretionary acts. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d (1971). As we explained in *McCleary,* the term "discretion" contemplates a process of reason-

ing dependent on facts in the record or fairly inferable from the record and a conclusion based upon the logical application of proper legal standards. *Id.* If the trial court states its reasoning on the record, and that reasoning indicates that discretion was properly exercised, the sentence should ordinarily be affirmed. *Id.* at 281.

In the past, we have outlined the factors appropriate for consideration in sentencing:

> The primary factors that a sentencing court considers are (1) the gravity of the offense, (2) the character of the offender, and (3) the need to protect the public. As part of these primary factors, the sentencing court may consider: the vicious or aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention.

*State v. Borrell,* 167 Wis. 2d 749, 773–74, 482 N.W.2d 883 (1992). This list is not exhaustive. The defendant's health can be considered at sentencing. *See, State v. Michels,* 150 Wis. 2d 94, 99–100, 441 N.W.2d 278 (Ct. App. 1989) (Defendant's health was a factor for trial court to consider at initial sentencing, but a change in health is not a "new factor" so as to warrant modification of original sentence.). The weight given to each factor is left to the trial court's broad discretion. *State*

128

*v. Thompson,* 172 Wis. 2d 257, 264, 493 N.W.2d 729 (Ct. App. 1992).

■

In this case, the record indicates that the circuit court properly exercised its discretion. The transcripts from the sentencing hearing and the hearing on post-conviction motions reveal that the circuit court considered a wide range of appropriate factors when it sentenced Iglesias. Those included not only her health, but the gravity of her crimes, her past criminal behavior, her character, and the need to send a "strong message" to deter would-be offenders from similarly exploiting minors. Moreover, there is no indication that the circuit court imposed a fine simply to "atone" for giving Iglesias a shorter prison sentence than it otherwise would have but for her poor health. The record indicates that the court weighed all the relevant factors, and arrived at a sentence which it felt was appropriate: twelve years in prison coupled with a substantial fine. We do not believe the circuit court erroneously exercised its discretion when it imposed that sentence.

■

Iglesias's second challenge to the fine is her contention that the circuit court imposed the fine without first ascertaining her ability to pay. Because Iglesias timely raised the issue of ability to pay in her postconviction motion, we agree that the circuit court had a duty to make a determination on that issue. *West Allis v. State ex rel. Tochalauski,* 67 Wis. 2d 26, 32, 226 N.W.2d 424 (1975); *Will v. State,* 84 Wis. 2d 397, 404, 267 N.W.2d 357 (1978).

In *State ex rel. Pedersen v. Blessinger,* 56 Wis. 2d 286, 291–92, 201 N.W.2d 778 (1972), this court cited with approval section 2.7 of the American Bar Associa-

tion's *Standards on Sentencing Alternatives and Procedures.* Subsection (c) of those guidelines provides the following:

> (c) In determining whether to impose a fine and its amount, the court should consider:
>
> (i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;
>
> (ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;
>
> (iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and
>
> (iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant.

Citing in particular those factors listed in subsection (i), Iglesias argues that in this case, the circuit court failed to adequately consider her limited financial resources and failed to consider the effect imposition of the fine would have on her other obligations. These other obligations, according to Iglesias, included outstanding medical bills, the support of her children, and the need to reimburse Bochler and Miller the bail money they posted on her behalf.

We believe the circuit court adequately considered these factors. First, with respect to Iglesias's financial resources, the circuit court noted that under Wisconsin law, money posted for bail, irrespective of its source, is conclusively presumed to be the defendant's money.

*State ex rel. Glidden v. Fowler,* 192 Wis. 151, 212 N.W.2d 263 (1927); *Gentilli v. Brennan,* 202 Wis. 465, 233 N.W. 98 (1930). In addition, the court noted that sec. 969.03(4), Stats., provides that bail money shall be applied to the payment of costs and fines imposed by the court. Together, the court reasoned that Iglesias had the ability to pay the judgment because the $11,750 in bail money was constructively her money, and the legislature authorized its use to satisfy fines and costs.

We agree with this analysis. Putting aside for the moment the constitutionality of sec. 969.03(4), Stats., the statute itself directs courts to use bail money as a means to satisfy any fines and costs imposed against the defendant. This is especially true in cases where defendants may otherwise contend they do not have the ability to pay. In sec. 969.03(4), the legislature has clearly indicated that bail money is to be viewed as a resource available to satisfy the payment of fines and costs. That fact, coupled with *Glidden*'s presumption that bail money belongs to the defendant, justified the circuit court's determination that Iglesias had adequate resources to pay the imposed fine.

We also believe that under these facts, the fine imposed by the circuit court could not have had any impact upon Iglesias's other obligations. Had a fine not been imposed, the bail money simply would have been returned to Bochler and Miller. Under no circumstances could the bail money have been used to satisfy any of Iglesias's other obligations. Nor are we swayed by Iglesias's argument that the court failed to take into account the large debt she now owes Bochler and Miller. Assuming for the moment that Bochler and Miller will demand repayment of their forfeited bail

money, we again note Iglesias's admission that there is virtually no prospect that she will ever earn any significant money the rest of her life. Thus, after the fine Iglesias is in precisely the same position she was in before the fine: indigent with no prospect for ever earning money. Using the bail money to satisfy her fine has not altered that situation in the least.

The second issue we address is whether sec. 969.03(4), Stats., violates either the United States or Wisconsin constitutions by providing that money posted for bail can be used to satisfy fines and costs levied against a defendant. First, though, we consider the state's contention that neither Iglesias nor Bochler and Miller have standing to make such a constitutional challenge. Iglesias, the state argues, lacks standing because the money that was posted for bail actually, as opposed to constructively, belonged to Bochler and Miller. Thus, when that money was applied to the judgment, Iglesias did not suffer any harm "in fact." Bochler and Miller, the state further asserts, lack standing because only the criminally accused have standing to challenge the conditions of their bail.

"A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action." *Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979). The law of standing is not to be construed narrowly or restrictively. *Bence v. Milwaukee,* 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982). Rather:

> [t]he essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete

adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

*Id.* at 479, quoting, *Duke Power Co. v. Carolina Env. Study Group, Inc.,* 438 U.S. 59, 72 (1978).

Applying these principles, we have absolutely no difficulty determining that all the appellants have standing to challenge the constitutionality of sec. 969.03(4), Stats. Certainly, Iglesias has a sufficient "personal stake" in the terms of her own bail and sentence so as to give her standing. And Bochler and Miller have if anything even more sharply-defined personal stakes in the matter. If sec. 969.03(4) is held to be unconstitutional because it violates the Excessive Bail Clause of either the federal or Wisconsin constitutions, the money they posted will be returned to them. That is more than sufficient to accord them standing.

We thus turn our attention to the constitutionality of sec. 969.03(4), Stats. Whether a statute is constitutional is an issue this court determines without deference to the lower courts. *State v. Hermann,* 164 Wis. 2d 269, 281, 474 N.W.2d 906 (Ct. App. 1991). Statutes are presumed to be constitutional, and the party bringing the challenge must show the statute to be unconstitutional beyond a reasonable doubt. *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). We begin by examining whether sec. 969.03(4), Stats. violates the United States constitution.

The Excessive Bail Clause of the Eighth Amendment reads simply that "Excessive bail shall not be required . . .." U.S. Const. amend. VIII, cl. 1. In this case, appellants do not argue that the *amount* of the bail, $11,750, was excessive. Rather, they argue that

sec. 969.03(4), Stats., violates the Excessive Bail Clause by allowing bail money to be used for a purpose other than assuring the defendant's appearance. This, they contend, makes the terms of bail "excessive" for Eighth Amendment purposes.

There is support for appellants' argument. In *Cohen v. United States,* 82 S. Ct. 526 (1962), the issue was whether the terms of bail set by the United States District Court for the Southern District of California were "excessive" because they expressly reserved a portion of the bail for the payment of a fine. In a one-Justice decision, Justice Douglas held that this condition constituted excessive bail because " 'a requirement that the bail bond should contain a condition that the bond should also operate as a supersedeas to a judgment for the payment of a fine, made the bail required excessive.' " *Id.* at 528, *quoting, Cain v. United States,* 148 F.2d 182 (9th Cir. 1945). "The bail fixed would become 'excessive' in the sense of the Eighth Amendment because it would be used to serve a purpose for which bail was not intended." *Id.* Other cases have drawn similar conclusions under similar facts. *See, e.g., United States v. Rose,* 791 F.2d 1477, 1480 (11th Cir. 1986):

> "We have no doubt that the addition of any condition to an appearance bond to the effect that it shall be retained by the clerk to pay any fine that may subsequently be levied against the defendant after the criminal trial is over is for a purpose other than that for which bail is required to be given under the Eighth Amendment. Such provision is therefore 'excessive' and is in violation of the Constitution."

See also, *Cain v. United States,* 148 F.2d 182 (9th Cir. 1945); and *State ex rel. Baker v. Troutman,* 553 N.E.2d

1053 (Ohio 1990); *Connley v. United States,* 41 F.2d 49 (9th Cir. 1930).

The state does not challenge the reasoning expressed in these cases. Rather, the state distinguishes them in light of the Supreme Court's decision in *United States v. Salerno,* 481 U.S. 739 (1987). One of the issues in *Salerno* was whether the Bail Reform Act of 1984, 18 U.S.C. sec. 3141, *et seq,* violated the Eighth Amendment's Excessive Bail Clause by allowing federal district courts in some cases to deny bail altogether when the defendant poses a special danger to either individual persons or the community. *Id.* at 741. The respondents in *Salerno* argued that by doing so, the statute effectively established an infinite amount of bail for reasons unrelated to the arrestee's risk of flight. This, they believed, violated the rule established in *Stack v. Boyle,* 342 U.S. 1 (1951), wherein the Court stated that "[b]ail set at a figure higher than an amount reasonably calculated [to ensure the defendant's presence at trial] is 'excessive' under the Eighth Amendment." *Stack,* 342 U.S. at 5.

The Supreme Court disagreed. "[W]e reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release." *Salerno,* 481 U.S. at 753. The Court explained further:

> Nothing in the text of the Bail Clause limits permissible Government considerations solely to questions of flight. The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be "excessive" in light of the perceived evil.

*Id.* at 754.

*Salerno* did not address the precise issue before us today, that being whether bail money can be used to satisfy fines imposed against the defendant. *Salerno* does, however, suggest that the Supreme Court no longer holds the view that the *only* permissible purpose of bail is to assure a defendant's appearance in court. Instead, *Salerno* indicates that bail is not excessive if it is used for a purpose which the legislature has deemed to be a compelling state interest. When the legislature identifies such an interest, the only constitutional limitation on bail is that its amount not be excessive relative to the interest sought to be furthered. *Id.* at 754.

Relying upon *Salerno,* the state argues that in all the cases cited by the defendant, i.e., *Cohen, Rose, Cain, Connelly,* and *Troutman* the use of bail to pay fines was judicially, as opposed to legislatively, mandated. The state agrees that in those instances the practice violates the Eighth Amendment. The state maintains, though, that under *Salerno,* the practice is acceptable if it is statutory in origin.

In support of this view, the state calls our attention to *United States v. Higgins,* 987 F.2d 543 (8th Cir. 1993). In *Higgins,* the court considered the constitutionality of 28 U.S.C. sec. 2044. That statute provided that:

> On motion by the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment

136

of any assessment, fine, restitution, or penalty imposed upon the defendant.[2]

*Id.* at 545 n.2. The *Higgins* court held that this provision did not violate the Eighth Amendment's Excessive Bail Clause. In fact, the court did not believe the statute even implicated the Eighth Amendment because, "[i]t is a simple procedural mechanism by which the government, after the purposes of bail have been served, may make a motion as a judgment creditor that the court order the bond fund be delivered to it." *Id.* at 547–48.

We believe the same can be said of sec. 969.03(4), Stats. That statute simply reflects the legislature's decision that once bail has served its purpose, that being to assure the defendant's appearance in court, the judge can then apply the money to satisfy the fines and costs imposed against the defendant. Section 969.03(4) does not implicate the level at which bail is set, nor does it allow courts to set bail with an eye towards eventual imposition of a fine. Section 969.03(4) merely provides that once bail has been properly set, and after it has served its purpose of assuring the defendant's appearance in court, the money can then be applied against the defendant's fines. As the *Higgins* court explained, this does not constitute a "precondition" on or even a use of bail. Rather, it is simply a procedural mechanism by which the state can collect fines which have been duly imposed against the

[2] Unlike sec. 969.03(4), Stats., 28 U.S.C. sec. 2044 specifically exempted third party sureties from its reach. We do not believe this distinction is significant to our analysis because in Wisconsin, bail money is conclusively presumed to be the property of the defendant. *Glidden,* 192 Wis. 2d at 158.

defendant.[3] For these reasons, we do not believe sec. 969.03(4) violates the Excessive Bail Clause of the Eighth Amendment.

Nor do we believe the statute violates the Wisconsin Constitution. Similar to the federal constitution, Article I, sec. 6, of Wisconsin's constitution guarantees that "Excessive bail shall not be required . . . ." In addition, Article I, sec. 8(2) of our state constitution goes on to provide that:

All persons, before conviction, shall be eligible for release under reasonable conditions designed to assure their appearance in court, protect members of the community from serious bodily harm or prevent the intimidation of witnesses. Monetary conditions of release may be imposed at or after the

---

[3] *See also, Bank of Hawaii v. Benchwick,* 249 F. Supp. 74 (D. Haw. 1966). There, the court observed that bail does "not exist for the propriety benefit of the sovereign, but specifically as a tool for use by the courts in the proper administration of criminal justice . . . ." *Id.* at 78. Nonetheless, the court recognized that the state, as sovereign, does acquire an interest in bail money by reason of imposition of a fine. When that occurs, "there is no indication that in so doing such courts have purported to enforce a property interest of the United States in the deposited fund itself, or were otherwise doing anything other than applying a presumptively unencumbered asset of the criminal defendant, as a matter of expediency and judicial discretion, to an unsecured claim of the Government." *Id.* at 79.

Other states have enacted statutes similar to sec. 969.03(4), Stats. See, for example, Tenn. Code Ann. sec. 40–11–121: "If a judgment for fine and court costs or either is entered in the prosecution of a cause in which a deposit had been made by defendant, the deposit shall be applied to the payment of the judgment." See also the discussion of similar statutes in *State v. Grant,* 606 P.2d 1166 (Ct. App. Ore. 1980) and *People v. Nicholls,* 374 N.E.2d 194 (Ill. 1978).

138

initial appearance only upon a finding that there is a reasonable basis to believe that the conditions are necessary to assure appearance in court . . ..

This language unambiguously provides that the *only* factor a court can consider when setting monetary conditions of bail is whether the amount is necessary to assure appearance in court. That reading is one which the courts of this state have long endorsed. "An accused has a constitutional right to reasonable bail and the amount thereof should be determined solely in reference to the purpose of bail, namely, to assure the appearance of the accused when it is his duty to appear to answer the criminal prosecution." *Whitty v. State,* 34 Wis. 2d 278, 286, 149 N.W.2d 557 (1967).[4]

Section 969.03(4), Stats., does not violate these precepts. As we indicated with respect to the statute's constitutionality under the federal Excessive Bail Clause, sec. 969.03(4) has no bearing upon why bail is set nor in what amount it is set. Properly understood, sec. 969.03(4) does not involve a use of bail whatsoever. The statute simply allows the government to lay claim, pursuant to a duly-entered judgment, to money that is legally presumed to belong to the defendant. As this court concluded nearly 70 years ago in *Glidden:*

money deposited as bail under a statute is conclusively presumed to be the property of the defendant so far as the purpose of the deposit is concerned. It may therefore be forfeited in the event that the per-

---

[4] Prior to being amended into its present form in 1981, Article I, sec. 8 of the Wisconsin constitution provided in pertinent part that "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great . . .."

son bailed fails to appear; if he be convicted and the statute so provides, it may be applied to the payment of his fine or other appropriate use may be made of it where the statute gives the State a claim upon it.

*Glidden,* 192 Wis. at 158.[5]

We are not alone in our view that sec. 969.03(4), Stats., does not violate the Wisconsin constitution. In 1979 and 1981, successive state legislatures passed the provision which became art. I, sec. 8(2). Those very same legislatures revised various portions of sec. 969.03(4), Stats.[6] Significantly, those legislatures elected to retain those provisions in sec. 969.03(4) which allow the judge to apply the money posted as bail in satisfaction of the defendant's fines. It is presumed, of course, that when the legislature acts, it is aware of the law, including this court's interpretation of the law. *Wood v. American Family Mutual Insurance Co.,* 148 Wis. 2d 639, 646, 436 N.W.2d 594 (1989); *City of Muskego v. Godec,* 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992). Thus, at the time art. I, Sec. 8(2) was ratified, the legislature knew that bail money was regarded as the defendant's money, and that sec. 969.03(4) allowed that money to go towards the satisfaction of fines and costs. We have in this case, then, that relatively rare instance where the legislature which revised a statute is the very same legislature that passed the constitutional provision that statute is now said to violate.

---

[5] In *Kasper v. State,* 333 S.W.2d 934, 935 (Tenn. 1960), the Tennessee Supreme Court held that statutes similar to sec. 969.03(4), Stats., are "universally" construed to apply to third party sureties. *Id.* at 935.

[6] Laws of Wisconsin, 1979, ch. 112; Laws of Wisconsin 1981, chs. 118, 183.

In such instances, courts accord increased deference to the legislature's determination of the statute's constitutionality. For instance, in *Boyd v. United States,* 116 U.S. 616 (1886) (overruled on other grounds in *Fisher v. United States,* 425 U.S. 391 (1976)) the question was whether a federal customs statute which authorized the seizure of forfeited or stolen goods violated the Fourth Amendment. *Id.* at 623. In its analysis, the Supreme Court gave great significance to the fact that the first statute authorizing such seizures was passed in 1789. Therefore:

> As this Act was passed by the same Congress which proposed for adoption the original amendments to the Constitution, it is clear that the members of that body did not regard searches of this kind as "unreasonable," and they are not embraced within the prohibition of the amendment.

*Id.* See also, *United States v. Ramsey,* 431 U.S. 606 (1977), *United States v. Villamonte-Marquez,* 462 U.S. 579 (1983).

Although concurrent enactment of a constitutional provision and a related statute does not assure the constitutionality of the latter, we believe it is strong evidence of what the drafters of the constitutional provision intended. This, in combination with our belief that sec. 969.03(4), Stats., is merely a procedural mechanism designed to foster the efficient collection of fines, leads us to conclude that sec. 969.03(4) does not violate art. I, sec. 8(2) of the Wisconsin constitution.

Appellants raise several additional constitutional arguments. First, Bochler and Miller argue that sec. 969.03(4), Stats., violates substantive due process

because the means chosen by the legislature, i.e., the use of bail money to satisfy fines, does not bear a rational relationship to the purpose of bail, i.e., assuring the defendant's appearance in court. *State v. Hermann,* 164 Wis. 2d 269, 284, 474 N.W.2d 906 (Ct. App. 1991). When posed in this manner, we would agree with appellants' due process argument. The problem is that the purpose of sec. 969.03(4) is *not* to assure the defendant's appearance in court. The purpose of sec. 969.03(4) is to facilitate the state's collection of fines which have been imposed upon the defendant following conviction. Viewed in that light, we believe the means chosen by the legislature, allowing a judge to apply the money that was posted as bail to satisfy fines, is a perfectly rational method to facilitate the collection of fines owed the state. The statute does not violate substantive due process.[7]

Bochler and Miller also suggest that the statute is irrational, or at least poor public policy, because it has a "chilling" effect on a criminal defendant's ability to have bail posted in his or her behalf. Such an argument, of course, is better addressed to the legislature than to this court. We do note, however, that sec. 969.03(4), or very similar statutes, have existed since 1901. Chapter 104, Laws of 1901, 1901 Wis. Laws at 131. Thus, this statute has existed for over ninety years, yet appellants present no evidence that the warned-of chilling effect has come to pass.

Finally, appellants argue that sec. 969.03(4), Stats., violates procedural due process in two respects:

---

[7] The same can be said for appellants' argument that seizing a third party's money bears no rational relationship to why a fine was imposed against the defendant. As we have already indicated, under *Glidden,* bail money, irrespective of its original source is conclusively presumed to be the defendant's property.

it does not require counties to inform persons that the money they post as bail may be used to satisfy fines and costs imposed against the defendant, and second, that the statute fails to provide notice of the sentencing hearing to the person or persons posting the bail.

This argument fails on several scores. First, with respect to providing adequate notice, "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply . . .. It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Texaco, Inc. v. Short,* 454 U.S. 516, 532 (1982). This reasoning is particularly apt with respect to a statutory provision which in one form or another has existed since 1901.

Even more compelling in this case is the fact that when they posted the bail money, both Bochler and Miller were given a receipt which warned them that:

> In the event the court orders a judgment for a fine or costs or both, the amount of cash deposited with this bond, if any, shall be applied to the payment of the judgment. This means that before any money is returned to the person or persons making the cash deposit, the cash deposit will first be used for payment of the judgment. Any excess will be returned to the person or persons making the cash deposit. (See ss. 969.02 and 969.03 Wis Stats.)

The receipt also contained a signature line, above which the following language appeared:

> I, the undersigned Surety, do hereby acknowledge receipt of a copy of this bond and I do further declare that I understand all of the conditions of this bond,

as set forth above and on the reverse side of this page.

Both Bochler and Miller signed the receipts handed to them.

Now, they argue in part that the language was never pointed out to them, and that they never read it. This is singularly unpersuasive. The receipts were written in very understandable English (both Miller and Bochler can read, although Bochler claims he reads only at the fifth-grade level.) Moreover, they signed the receipts thereby acknowledging they had read them. In this case, we believe that procedural due process was clearly satisfied by publication of the statute, the length of time the statute has been in effect, and primarily by the notice language on the receipt itself, which both Bochler and Miller signed.

Similarly, we reject the idea that sec. 969.03(4), Stats., is procedurally inadequate because it fails to guarantee that notice of the sentencing hearing will be provided to those who post bail money. The warning language on the receipt, as well as the statute itself clearly put the sureties on notice that they risk having the bail money seized. That is adequate notice for constitutional purposes. It is not too great a burden for the sureties and the defendant to work out amongst themselves a system by which the surety becomes aware of the sentencing hearing, or by which they arrange to reclaim their money prior to judgment.[8]

---

[8] Appellants concede that nothing prevents a third party surety, prior to the time judgment is entered, from surrendering the defendant to custody and reclaiming the entire amount of bail money they posted. Moreover, the circuit court can at any time prior to entering a judgment for fines and costs, order the

Having said that, we suggest that in the future, the language on the receipt be written in large, bold letters so as to reasonably assure that third parties who post bail are aware of the fact that their funds can be used to satisfy any fines and costs levied against the defendant. While we do not believe this additional notice is constitutionally mandated, we do believe that it is good public policy.

In summation, we hold that the trial court did not erroneously exercise its discretion when it imposed a fine as part of its judgment against Iglesias. We further hold that sec. 969.03(4) does not violate either the United States or Wisconsin Constitutions.

*By the Court.*—Judgment of the circuit court is affirmed.

WILLIAM A. BABLITCH, J. *(dissenting)*. The purpose of bail is to assure the appearance of the accused when it is the accused's duty to appear to answer the criminal prosecution. *Whitty v. State,* 34 Wis. 2d 278, 286, 149 N.W.2d 557 (1967); Wis. Const. Art. I sec. 8(2). The majority today concludes that bail posted by third parties on behalf of a defendant may be applied to fines imposed at sentencing. Because bail is being used in this case for purposes for which it was not intended and is thus "excessive," and because its use in this manner will have a chilling effect upon a defendant's constitutional rights to pretrial release, I conclude that it is contrary to the dictates of the United States and Wisconsin Constitutions. Accordingly, I dissent.

return of bail money to the defendant or to the person who posted it.

145

The Eighth Amendment to the United States Constitution states that, "[e]xcessive bail shall not be required . . .." Bail is excessive if it is used for a purpose other than that for which bail is required to be given under the Eighth Amendment. *Cohen v. United States,* 82 S. Ct. 526, 528 (1962); *United States v. Rose,* 791 F.2d 1477, 1480 (11th Cir. 1986); *Cain v. United States,* 148 F.2d 182, 183 (9th Cir. 1945); *Connley v. United States,* 41 F.2d 49, 51 (9th Cir. 1930). Courts have consistently held that when a defendant is afforded the opportunity to post bail, the monetary condition of bail is used for the sole purpose of assuring the defendant's appearance at trial. *Rose,* 791 F.2d at 1480. In addition, throughout the American Bar Association's Standards For Criminal Justice, the ABA reiterates that the sole purpose of bail is to assure appearance. *See, e.g.,* ABA Standards For Criminal Justice, 10–5.3(b) (1985):

> The sole purpose of monetary conditions is to assure the defendant's appearance. Monetary conditions should not be set to punish or frighten the defendant, to placate public opinion, or to prevent anticipated criminal conduct.

Therefore, if bail is used for purposes for which it was not intended, i.e, other than to assure the appearance of the defendant, the bail is excessive and in violation of the Eighth Amendment.

The Wisconsin Constitution, Art. I sec. 6, mirrors that of the United States Constitution. In addition, Art. I sec. 8(2) of the Wisconsin Constitution provides: "Monetary conditions of release may be imposed at or after the initial appearance only upon a finding that there is a reasonable basis to believe that the conditions are necessary to assure appearance in court."

This language indicates that monetary conditions, i.e., bail money, can only be required to assure appearance.

The majority seems to acknowledge this much. The majority rejects the conclusion, however, that using bail money for satisfying fines imposed on the defendant violates these principles. The majority arrives at this conclusion on the basis that "sec. 969.03(4) does not involve a use of bail whatsoever." Majority op. at 140. In other words, the majority concludes that the money originally collected to assure appearance in court, is no longer "bail money" at the time of entering a judgment for fines and therefore, can be used to satisfy the fines imposed. The majority illustrates this distinction by stating that prior to entry of judgment for fines, the circuit court may return bail money to the defendant. Majority op. at 145–146 n.8. After judgment, however, the circuit court may not. To me this is a matter of form over substance. The majority offers no basis in law for such a distinction, and I can discern none for I see no distinction between bail money at the time it is deposited and bail money at the time of judgment.

In addition, I find that the court's reasoning in *U.S. v. Higgins,* 987 F.2d 543 (8th Cir. 1993), (cited by the majority) offers no additional support for the majority's conclusion. The *Higgins* court simply concluded, without reason, that 28 U.S.C. sec. 2044, (which allows money posted by the defendant, in contrast to bail money posted by third parties, to be used to satisfy fines) constitutes a simple "procedural mechanism" by which to collect money and thus does not implicate the Eighth Amendment. This conclusion is as troubling to me as that of the majority's in this case. I see no basis to conclude as the majority did that once

judgment is entered, bail money may be used for purposes other than assuring appearances.

Further, I do not agree with the majority's endorsement of the State's reading of *United States v. Salerno*, 481 U.S. 739 (1987). Majority op. at 136–137. The State argues that under *Salerno*, bail money can be used for purposes other than assuring appearances in court as long as the purpose is statutory in origin. This is a misreading of *Salerno*. *Salerno* held that the government, in regulating pretrial release, can pursue other interests besides flight. In other words, in addition to requiring bail money for the purpose of discouraging flight, the government, through statutory means, can prohibit release altogether for reasons such as public safety. The statement immediately following that quoted by the majority, indicates this:

> We believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, as it has here, the Eighth Amendment does not require release on bail. *Id.* at 754–55.

*Salerno* clearly does not effect in any manner the government's ability to use bail money for a purpose other than appearance.[1]

Because I believe 1) that money posted for bail, for the purpose of assuring a defendant's appearance, is bail money no matter the chronological status of the case and 2) that bail may only be used to assure appearances, not revenue raising as is the case here, I would join those courts that have determined that the use of

---

[1] The majority even admits that bail is collected only to assure appearance. I assume that the majority would agree that even though sec. 969.03(4), Stats., states that bail may be used to pay fines, it does not make that a "purpose" of bail.

bail for satisfying fines is unconstitutionally excessive. *See, e.g., Cohen,* 82 S. Ct. 526; *Cain,* 148 F.2d 182; *United States v. Rose,* 791 F.2d at 1477; *State ex rel. Baker v. Troutman,* 553 N.E.2d 1053 (Ohio 1990).

I would find the use of bail here unconstitutional for a second reason as well: I believe that the use of bail money posted by third parties to satisfy defendant's fines will have a chilling effect upon a defendant's constitutional rights to pretrial release for bailable crimes. In its decision, the majority suggests that the statement on the bail receipt, which warns parties that bail money may be used for fines, be printed in large, bold letters so as to adequately inform those parties posting bail. Majority op. at 145–146. I completely agree that those parties should be warned. I am concerned, however, that once third parties are made aware of the potential use of the bail money they will no longer be willing to post the bail. Indigent people who have not yet been proven guilty, who rely on friends or relatives to post bail so that they may be released prior to trial, will suffer. The ABA, in its Standards for Criminal Justice, recognizes the consequences of being detained prior to trial. These consequences become especially harsh when a defendant is detained solely on the basis of indigency:

> [D]eprivation of liberty pending trial is harsh and oppressive, subjects persons to economic and psychological hardship, interferes with their ability to defend themselves, and, in many instances, deprives their families of support . . .. ABA Standards For Criminal Justice, sec. 10–1.1.

The district court in *United States v. Davis,* 47 F. Supp. 176, 179 (S.D.N.Y. 1942) commented a great deal

149

on this effect, and I adopt the concerns expressed therein:

> [B]oth friends of the accused and professional sureties alike will be deterred from posting cash bail since the scope of the risk thus undertaken is generally not measurable. This will not affect those accused of crime who are in position to command a surety company bond. Surety companies deposit no cash but only their promises to pay and they are thus exempt from the hazard of being called upon to pay a fine imposed upon the defendant. But consider the case of the person who finds himself accused of crime in a strange community or of a crime which arouses public passion, who has no access to surety companies and must rely on distant friends unable to qualify as sureties by reason of their non-residence. Such a person who needs bail most will find himself as effectively denied the benefits of that great privilege as if it had never been hallowed by incorporation in the Constitution.

The United States Congress apparently recognized the potential for such an effect: 28 U.S.C. sec. 2044 (the statute at issue in *Higgins*) exempted third party sureties from its reach. The majority, however, as it states in its opinion, sees no distinction between applying the statute to money posted by the defendant and money posted by third parties. Majority op. at 138 n.2.[2] Because I find either application unconstitutional, I dissent.

---

[2] In support of its position, the majority cites to *Glidden v. Fowler,* 192 Wis. 151, 212 N.W.2d 263 (1927), for the proposition that bail money is presumed to belong to the defendant until such purposes for which it was deposited are accomplished. Majority op. at 140. Although *Glidden* states that a purpose is to satisfy fines as provided in the statute (an earlier version of

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice SHIRLEY S. ABRAHAMSON join in this dissent.

969.03), *Glidden* did not determine whether such use was constitutional. I maintain that it is not.