# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2019AP224-CR<br>2019AP225-CR<br>2019AP226-CR |

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES A. JONES,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | February 17, 2021 |
| Submitted on Briefs: | December 16, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Donarski* of *Law Office of William J. Donarski*, Green Bay. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Robert G. Probst*, assistant attorney general. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 17, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal Nos.** **2019AP224-CR** **2019AP225-CR** **2019AP226-CR** | **Cir. Ct. Nos. 2016CF687** **2016CF736** **2017CF852** |

**STATE OF WISCONSIN**  **IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMES A. JONES,

DEFENDANT-APPELLANT.

---

APPEALS from judgments and an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Reversed in part and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. James Jones appeals judgments of conviction and, primarily, an order denying his postconviction motion seeking the return of bond

monies that were posted by other persons.[1] The bond monies were posted in connection with two cases that were dismissed but read in at sentencing as part of a global plea agreement encompassing five cases. Jones contends the circuit court lacked statutory authority to order the use of bond monies from the dismissed but read-in cases to pay restitution in the cases to which Jones pled no contest as part of the plea deal. We agree with Jones that WIS. STAT. § 969.03(5) (2017-18)[2] requires that any bond money posted shall be returned to the payor once a complaint against the defendant is dismissed, even if the underlying offenses comprising that criminal action are read in at sentencing for a different case. Accordingly, we reverse in part the judgments and the postconviction order and remand so that the circuit court may grant Jones's postconviction motion and order the refund of the appropriate monies.

## BACKGROUND

¶2 This appeal involves numerous offenses and underlying criminal cases arising from a series of thefts throughout Outagamie County. First, on January 27, 2016, Jones was charged in Outagamie County case No. 2016CF52. The complaint alleged that on the previous day, Jones was found in a vehicle bearing incorrect license plates. The police observed that Jones was in possession of a crowbar, a screwdriver, bolt cutters, a hammer, and numerous other license plates (one of which had been reported as stolen), along with two empty radio scanner boxes and other electronic merchandise. Jones was ultimately charged in case

---

[1] The parties use the terms "bail" and "bond" interchangeably, and we do as well in this opinion. Any technical distinction between these terms is immaterial to the disposition of these appeals.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

No. 2016CF52 with possession of burglarious tools and misdemeanor receiving/concealing stolen property, both charges as a repeater. We will refer to this case as "the burglary tools case."

¶3    Second, on August 10, 2016, Jones was charged in Outagamie County case No. 2016CM761 with misdemeanor retail theft as a repeater. The complaint alleged that on January 22, 2016, Jones entered a Radio Shack store and shoplifted two empty radio scanner boxes and an electrician's multi-meter. The radio scanner boxes matched the boxes that were found with Jones when he was arrested in relation to the burglary tools case, and Jones matched the description of the suspect in the theft. We will refer to case No. 2016CM761 as "the Radio Shack case."

¶4    Also on August 10, 2016, Jones was charged in Outagamie County case No. 2016CF687. The complaint alleged that on January 22, 2016, Jones had entered a sporting goods store along with an accomplice. Jones was alleged to have taken four trail cameras worth almost $2,000 while his accomplice distracted employees. Jones was charged with a single count of felony retail theft, as a repeater. This case will be referred to as "the trail cameras case."

¶5    Finally, on August 25, 2016, Jones was charged in Outagamie County case No. 2016CF736. The complaint alleged that on January 12, 2016, Jones, along with two accomplices, burglarized a laundromat that contained gaming machines. The crew was alleged to have broken into the building, after which they sawed open the fronts of several gaming machines and stole the money inside them. Jones was charged with a single count of burglary of a building or dwelling as a party to a crime and as a repeater. We will refer to this case as "the laundromat case."

3

¶6      On June 7, 2016, Jones's mother posted a $2,500 cash bond in the burglary tools case. Later, on September 27, 2016, a friend of Jones, Vincent Udo, paid $1,200 for the total bail ordered in the other three cases, comprising $200 in the Radio Shack case and $500 each in the trail cameras and laundromat cases. Even though the $1,200 was paid as one lump sum, it was designated to each separate case. The bail/bond forms each contained the same language, including a warning that "[a]ny restitution ... or costs imposed against the defendant shall be paid out of the bail/bond without further notice."

¶7      The State and Jones ultimately reached a plea agreement involving all of the above-referenced cases. In the trail cameras case, Jones agreed to plead no contest to the felony retail theft charge, but without the repeater enhancer. In the laundromat case, the single charge of burglary as a repeater was amended to three reduced charges to which Jones pled no contest.[3] Meanwhile, the parties agreed that the charges in the Radio Shack case and the burglary tools case would be dismissed and read in at sentencing. In addition, Jones would plead no contest to a yet-to-be-filed charge of operating a motor vehicle without the owner's consent—later filed as Outagamie County case No. 2017CF852—with the State agreeing to recommend, on that charge, a sentence concurrent to any time served on the above charges. We will refer to case No. 2017CF852 as "the OMVOC case."

¶8      As part of the global plea agreement, Jones agreed to pay restitution on the charges to which he pled no contest. The plea questionnaire/waiver of rights form that Jones signed also stated that he understood he "may be required to pay

_____

[3] The amended charges were for possession of burglary tools, felony theft, and criminal damage to property.

restitution on any read-in charges," which is a correct statement of the law. *See* WIS. STAT. § 973.20(1g)(a), (1r).

¶9 The cases proceeded to a combined plea hearing and sentencing. Jones first entered a plea to the single count in the OMVOC case.[4] The OMVOC case and the two other cases still remaining—i.e., the trail cameras and laundromat cases—then proceeded to sentencing. As relevant here, the circuit court ordered that restitution be paid in two of the cases. First, it imposed $1,999.96 of restitution to the sporting goods store for the stolen trail cameras, plus costs and surcharges. It also imposed $1,200 of restitution, plus costs and surcharges, to be paid to the owner of the vehicle involved in the OMVOC case. The court did not specify on the record that the bond money was to be used toward restitution, but it did require that Jones "pay court costs and supervision fees in a timely manner, and that you pay the restitution as requested." There was no restitution claimed, nor ordered, in the two cases that were dismissed and read in—i.e., the burglary tools and Radio Shack cases—or in the laundromat case.

¶10 On November 9, 2018, Jones filed a motion for postconviction relief. As relevant here, the motion asked the circuit court to "correct the distribution and application of the monies posted for bond." Specifically, Jones argued that the clerk improperly "applied bond monies posted on dismissed and read-in cases to amounts owed for restitution and costs on the cases Jones was convicted of." According to Jones, no statutory authority permitted the clerk to use the bond monies posted in the cases involving the dismissed but read-in counts to pay his restitution obligations in the trail cameras and OMVOC cases. Indeed, Jones argued that WIS. STAT.

---

[4] Jones had earlier entered his no-contest pleas in the trail cameras and laundromat cases.

5

§ 969.03(5) specifically required that the bond money deposited in connection with the dismissed but read-in counts in those separate cases be returned to Jones's mother and to Udo—i.e., the persons who posted them.

¶11    Additionally, Jones pointed to WIS. STAT. § 969.03(4)'s language stating that when "a judgment of conviction is entered in a prosecution in which a deposit had been made," "the balance of the deposit ... shall be applied first to the payment of any restitution ordered ... and then … to the payment of the judgment." Jones asserted that because there was no judgment of conviction entered on the complaints that included the charges that were dismissed but read in from the burglary tools and Radio Shack cases, § 969.03(4)'s directive to first apply bond money to restitution did not apply.

¶12    A hearing was held on Jones's postconviction motion, after which the circuit court denied the portion of the motion regarding the application of the bond monies.[5]  The court opined that WIS. STAT. § 969.03(5) does not "answer[] what happens in dismissed and read[-]in cases clearly" because that statute only mentions dismissed cases, not cases that are dismissed but include read-in counts.  The court rejected Jones's argument that the word "prosecution" in § 969.03(4) refers only to a single criminal action; rather, the court reasoned that Jones's cases were all one "prosecution."  As the court noted, Jones's plea agreement resolved five pending cases against him at once (in addition to a sixth offense not relevant to the issues here, which was a criminal traffic case that was dismissed outright).  The court pointed out that all of the cases were prosecuted by the same assistant district attorney and defended by the same defense attorney.  Accordingly, the court viewed

_____

[5] The circuit court did partially grant relief by ordering the restitution owed in the trail cameras case to be joint and several with Jones's co-defendant.  That portion of the court's order is not at issue on appeal.

all six cases resolved by the global plea agreement as a single "prosecution" under § 969.03(4), such that it was appropriate to apply the bond posted in the dismissed cases with read-in charges to the restitution owed in the cases to which Jones pled no contest.

¶13 The circuit court also concluded that WIS. STAT. § 969.03(5) distinguishes between cases that are dismissed outright and cases that are dismissed and read in, and subsec. (5) applies only to the former. The court noted the parties had agreed to dismiss outright the traffic case (rather than dismissing and reading it in) before sentencing, leading the court to conclude that the parties themselves, by their handling of the various matters, had been drawing a distinction between the two types of dismissals. The court concluded that § 969.03(5) specifically mentioned only two types of cases: those that are "dismissed" and those of which "the defendant has been acquitted." Thus, in the court's view, "the fact that the legislative branch did not include dismissed and read[-]in [cases] in [§] 969.03(5) may be indicative that it was not their intention to include dismissed and read[-]in [cases] with that statute."

¶14 The circuit court then concluded that WIS. STAT. § 973.20, Wisconsin's restitution statute, supported its interpretation of WIS. STAT. § 969.03. The court noted that the restitution statute specifically defines "a crime considered at sentencing" to include "any crime for which the defendant was convicted and any read-in crime." *See* § 973.20(1g)(a). Because the counts in the burglary tools and Radio Shack cases were dismissed but read in "for purposes of 973.20(1g)," the court concluded that it was "appropriate to consider [them] for purposes of restitution." Thus, the court reasoned, it was "appropriate and lawful and within the statute to allow restitution to be paid from a case where Mr. Jones had it dismissed

7

and read in and that that case was part of a package deal that involved cases that led to convictions with restitution amounts due and owing."

¶15    Jones now appeals, asserting that, for the reasons explained in his postconviction motion, the bond monies posted in connection with the dismissed and read-in cases—i.e., the burglary tools and Radio Shack cases—must be returned to the individuals who posted those monies under WIS. STAT. § 939.03(5).[6]

## DISCUSSION

¶16    One procedural matter requires attention before we reach the issue Jones raises regarding the bond monies paid in connection with the dismissed and read-in cases. The State argues that Jones lacks standing to challenge the distribution of the bond monies because they were posted by other individuals on his behalf. The State urges us to affirm the circuit court's decision on this alternative rationale. *See* ***Blum v. 1st Auto & Cas. Ins. Co.***, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78. Whether a party has standing is a question of law that we review de novo. ***Krier v. Vilione***, 2009 WI 45, ¶14, 317 Wis. 2d 288, 766 N.W.2d 517.

¶17    The State's argument consists of a general application of the factors articulated by the lead opinion in ***Foley-Ciccantelli v. Bishop's Grove Condominium Ass'n***, 2011 WI 36, ¶5, 333 Wis. 2d 402, 797 N.W.2d 789. But there is no need for such a factor-by-factor analysis, as a prior case has directly addressed the State's argument here. In ***State v. Iglesias***, 185 Wis. 2d 117, 517 N.W.2d 175 (1994), our supreme court held that a defendant "has a sufficient 'personal stake' in

---

[6] By order of this court, the three appeals at issue were consolidated for the purposes of briefing and decision.

the terms of her own bail and sentence so as to give her standing" regardless of who actually posted the bail. *Id.* at 132-33. "[U]nder Wisconsin law, money posted for bail, irrespective of its source, is conclusively presumed to be the defendant's money." *Id.* at 130-31 (citations omitted). We therefore proceed to consider the merits of Jones's arguments.

¶18 Jones's claims on appeal largely follow those made in his postconviction motion. *See supra* ¶¶10-11. Generally, he argues that the dismissed and read-in charges from the burglary tools and Radio Shack cases constituted "dismissed" complaints under WIS. STAT. § 969.03(5), and therefore the monies posted for bond in connection with those two cases were required to be returned to their respective depositors. Resolving this argument requires us to interpret and apply § 969.03 and related statutes. Statutory interpretation and application are questions of law that we review de novo. *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶25, 391 Wis. 2d 231, 942 N.W.2d 277.

¶19 "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State v. Braunschweig*, 2018 WI 113, ¶12, 384 Wis. 2d 742, 921 N.W.2d 199 (quoting *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110). When interpreting a statute, we begin with its language. *State v. Neill*, 2020 WI 15, ¶21, 390 Wis. 2d 248, 938 N.W.2d 521. If the meaning of the statute is plain, we go no further. *Id.* "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶20    When an individual is arrested for a criminal offense, Wisconsin law permits the circuit court to make him or her eligible for release "under reasonable conditions designed to assure his or her appearance in court, protect members of the community from serious bodily harm, or prevent the intimidation of witnesses." WIS. STAT. § 969.01(1).  In a felony case, a judge may release the defendant with a number of conditions, including by requiring "the execution of an appearance bond with sufficient solvent sureties, or the deposit of cash in lieu of sureties."  WIS. STAT. § 969.03(1)(d).

¶21    Jones's statutory argument is straightforward.  In pertinent part, WIS. STAT. § 969.03(5) requires that "[i]f the complaint against the defendant has been dismissed or if the defendant has been acquitted, the entire sum deposited [under § 969.03(1)(d)] shall be returned."  Jones contends that the burglary tools and Radio Shack cases against him were "dismissed" for purposes of § 969.03(5), even though the counts that were part of those cases were read in at his sentencing.  In other words, Jones claims that, under subsec. (5), "there is no difference between 'dismissed and read-in' and 'dismissed,'" and the bond monies should therefore be returned.

¶22    The State's argument is more nuanced.  It contends that WIS. STAT. § 969.03(5) refers to a complaint that is dismissed outright—not to particular offenses charged in a complaint that are later dismissed and read in at any sentencing.  The State reaches this conclusion by referring to the circumstances surrounding the legislature's enactment of a different provision: § 969.03(4).  Subsection (4) states as follows:

> If a judgment of conviction is entered in a prosecution in which a deposit had been made in accordance with sub. (1)(d), the balance of the deposit, after deduction of the bond

10

> costs, shall be applied first to the payment of any restitution ordered under s. 973.20 and then, if ordered restitution is satisfied in full, to the payment of the judgment.[7]

The State contends that subsec. (4) permitted the circuit court clerk to apply the bond monies posted in connection with the burglary tools and Radio Shack cases to the restitution ordered in the other cases that were resolved as part of the global plea agreement, under the theory that all of the cases formed one "prosecution."

¶23 The State further contends that its argument is supported by the restitution statute, WIS. STAT. § 973.20, which is cross-referenced in WIS. STAT. § 969.03(4). Under § 973.20(1r), a circuit court is authorized when imposing a sentence to "order the defendant to make full or partial restitution … to any victim of a crime considered at sentencing." A "crime considered at sentencing" describes not only the crime of conviction, but also any read-in crime. Sec. 973.20(1g)(a). And § 973.20(1g)(b) further defines a "read-in crime" as "any crime that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing" and that is actually considered by the court during sentencing for the crime of conviction. This language describes all of the offenses charged in the burglary tools and Radio Shack cases.

¶24 Accordingly, whether the bond posted in those cases can be applied to the restitution ordered in the trail cameras and OMVOC cases depends on the treatment of the burglary tools and Radio Shack cases under WIS. STAT. § 969.03. We must determine whether the criminal complaints in the burglary tools and Radio

---

[7] WISCONSIN STAT. § 969.02(6) contains a similar provision relating to misdemeanor offenses.

Shack cases were "dismissed" under § 969.03(5), thereby necessitating the return of the bond monies posted in those cases. Or does the global plea agreement make all of the cases a single "prosecution in which a deposit had been made," such that the bond monies posted for the burglary tools and Radio Shack cases—both of which consisted entirely of dismissed but read-in charges—may be applied to the judgment of conviction containing the restitution ordered in the other cases?

¶25 As an initial matter, and regarding the meaning of WIS. STAT. § 969.03(5) itself, we reject the notion that any weight should be given to the omission of a specific reference to read-in charges or complaints. It is charges/crimes that are read in for sentencing purposes, not complaints or cases per se, even though the common vernacular is to refer to cases, complaints, crimes and charges all as being "dismissed." *See State v. Straszkowski*, 2008 WI 65, ¶58 & n.33, 310 Wis. 2d 259, 750 N.W.2d 835 (discussing the nomenclature used in various cases). A complaint necessarily is "dismissed" either when the charges within it are dismissed "outright" or when they are dismissed "and read in." Indeed, it is a logical fallacy to conclude, as the State does, that a dismissed complaint is not "dismissed" merely because charges constituting that complaint are "read in" for sentencing purposes in a wholly unrelated, separate case. Accordingly, and contrary to the State's argument, it is the State—not Jones or this court—that is reading into the statute a meaning inconsistent with its plain language.

¶26 We also conclude that the State's interpretation of WIS. STAT. § 969.03(4) is incomplete and does not accurately describe what occurred in these cases. While the State focuses on the phrase "any restitution ordered under s. 973.20," it fails to adequately account for limiting language earlier in the single sentence that is § 969.03(4). In particular, subsec. (4) requires the entry of a

judgment of conviction "in a prosecution in which a deposit had been made." No judgment of conviction was entered in either the burglary tools case or the Radio Shack case.[8] To accept the State's argument, one has to view the judgments of conviction in the trail cameras, laundromat and OMVOC cases as being part of the same "prosecution" as the burglary tools and Radio Shack cases in which the deposits were made. We find this interpretation untenable.

¶27 The term "prosecution" in WIS. STAT. § 969.03(4) is not defined anywhere in WIS. STAT. ch. 969. The State argues that what constitutes a single "prosecution" should be determined by a number of factors, including whether there was a single plea agreement, whether the resolution of the charges occurred in a single proceeding, and whether there was a single sentencing hearing, most of which occurred here.[9] The circuit court also noted that all of Jones's cases resolved in the underlying proceedings were prosecuted by the same assistant district attorney and defended by the same attorney. We disagree that these factors—and the potential happenstances by which they would occur—should alter the plain reading of § 969.03(4) and (5) as contemplating a "prosecution" as being defined by a single complaint and resultant criminal action.

¶28 Nothing in WIS. STAT. § 969.03(4) suggests that the kind of analytical complexity the State endorses is necessary. In common, ordinary and accepted

---

[8] The absence of a judgment of conviction in the burglary tools and Radio Shack cases bears emphasis. WISCONSIN STAT. § 969.03(4) requires the applicable bond money to be applied first to restitution, then to the payment of the judgment. This sequencing directive cannot work without a judgment of conviction.

[9] This last suggestion by the State is somewhat odd, as the plea in the OMVOC case was not handled at the same time as the pleas in the other cases. In fact, the OMVOC case had not yet been charged at the time the parties agreed to resolve all the cases.

13

parlance, a "prosecution" is simply a pending criminal proceeding against a person in which one or more criminal charges have been levied. As Jones notes, each criminal case has its own complaint, preliminary hearing, conditions of release (including possibly a bond), and, perhaps most relevant here, judgment of conviction; and each case gives rise to separate—and important—procedural rights on the defendant's part. Even the State appears to accept the notion that each criminal case against Jones was a separate prosecution, at least initially, because it posits that they only became one prosecution at the time the global plea agreement was formed. But under the disposition resulting from that plea deal, there still was no "judgment of conviction … entered in" the burglary tools and Radio Shack cases "in which [the] deposit[s]" at issue "had been made in accordance with sub. (1)(d)."[10] *See* § 969.03(4).

¶29 Contrary to the State's argument, viewing each criminal case as its own prosecution is fully consistent with our canons of statutory interpretation. We interpret statutory language in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely related statutes; and reasonably, to avoid absurd results. ***Braunschweig***, 384 Wis. 2d 742, ¶13. The State correctly observes that the restitution statute, WIS. STAT. § 973.20(1r), permits a circuit court to order restitution on a dismissed but read-in count as part of the

---

[10] We further observe the particular language in WIS. STAT. § 969.03(1)(d), as well as in the remainder of § 969.03. Subsection (1) begins by couching all of what follows as happening after "[a] defendant [has been] charged with a felony," and throughout § 969.03 there are references to "an appearance bond," to "a charge [that] is pending," to "the complaint," and to "a deposit of cash," "the cash deposit," or "a deposit." Such language gives further credence to our conclusion that the legislature intended § 969.03 as referring, at all times, to a single criminal case, as the legislature plainly contemplated that a "prosecution" encompasses the processes triggered by the filing of an individual criminal complaint. As a result, the meaning of a "prosecution" does not change depending on subsequent events, such as a plea agreement that covers several cases.

judgment for the crime of conviction. The statute does not, however, dictate whether or how bond money should be applied to reduce the amount of those obligations. That matter is addressed by WIS. STAT. § 969.03. The mere fact that charges that are dismissed outright are treated differently under § 973.20 than those that are dismissed and read in for restitution purposes does not mean they are treated differently for purposes of § 969.03 and the return of bond money, at least given the absence of any language in the latter statute to suggest as much.[11] As a result, the State's observation that a defendant may not again be charged with a dismissed and read-in offense is true, but it is of no consequence—at least when the circuit court does not order any restitution for any read-in charge in that dismissed case.[12] *See State v. Frey*, 2012 WI 99, ¶43, 343 Wis. 2d 358, 817 N.W.2d 436.

¶30    The State's policy argument is also misdirected. It is true that WIS. STAT. § 969.03(4) was plainly meant to prioritize the compensation of crime victims. *See State v. Madlock*, 230 Wis. 2d 324, 332, 602 N.W.2d 104 (Ct. App. 1999). But even the State must acknowledge certain limitations to that principle. For example, had Jones been acquitted of the charges in the burglary tools or Radio Shack cases, there is no doubt the circuit court clerk could not apply the bond money posted in connection with those cases to the ordered restitution in the remaining cases. *See* WIS. STAT. § 969.03(5). There is an equally plain legislative purpose

---

[11] Indeed, it should be noted that the definitional terms in WIS. STAT. § 973.20 upon which the State relies, *see supra* ¶23, specifically apply only "[i]n this section"—that is, § 973.20, *not* WIS. STAT. § 969.03.

[12] Given the facts of these cases, we need not address whether the same result obtains when the circuit court does order restitution for a dismissed and read-in offense from a separate criminal case that is resolved as part of a global plea agreement.

codified in § 969.03(5) to return bond money that is part of a prosecution for which no judgment of conviction is ultimately entered. And here, the State does not explain how individuals who posted bond for Jones in the burglary tools and Radio Shack cases—perhaps under the belief that he was not guilty of *those* offenses— could reasonably expect that those funds would be applied to the restitution Jones owed for entirely different crimes for which he was convicted.[13]

¶31 Contrary to the complex interpretive efforts necessary to reach the State's conclusion, Jones offers a straightforward and sensible interpretation of WIS. STAT. § 969.03(5), which we adopt. When all of the counts in a criminal complaint are dismissed and read in, and no restitution is ordered on any of those counts at the sentencing for the crime or crimes of conviction in separately charged cases, that complaint has been "dismissed" for purposes of § 969.03(5). This interpretation harmonizes the relevant statutes and achieves a reasonable result in which funds that are placed at risk to secure the defendant's appearance in a particular case may be applied toward restitution on that case, but not toward other, unrelated cases.

¶32 Accordingly, the $2,500 bond posted in connection with the burglary tools case and the $200 bond posted in connection with the Radio Shack case must be returned. There was no restitution ordered in the laundromat case, and Jones acknowledges the bonds posted in connection with the trail cameras and OMVOC cases could be properly applied toward the restitution ordered as part of the judgments of conviction. We reverse the portions of the judgments directing that the bond monies in the burglary tools and Radio Shack cases be used to satisfy

---

[13] We do not find compelling the State's observation that the bond forms notified the payor that any restitution would be paid out of the bond. In our view, the form does not clearly inform the reader, merely by its oblique reference to "any restitution," that the bond may be used to pay for restitution owed in other cases.

Jones's restitution obligations and remand so that the circuit court may grant Jones's motion and order the refund of the appropriate monies.

*By the Court.*—Judgments and order reversed in part and cause remanded with directions.